# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

**CASE NO.: 0:18-cv-62058-BB**

LAWANDA JOHNSON,

          Plaintiff,

                                    **JURY TRIAL DEMANDED**

vs.

CAPITAL ONE SERVICES, LLC

          Defendant.

_____/

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW

COMES NOW Plaintiff, LAWANDA JOHNSON ("Plaintiff" or "Ms. Johnson"), by and through his undersigned counsel, and hereby opposes Defendant's Motion for Summary Judgment [DE 25] and states as follows:

## INTRODUCTION

Ms. Johnson initiated this lawsuit on August 30, 2018 by filing a three-count complaint for violations of the Telephone Consumer Protection Act, 47 U.S.C § 227, *et seq*. ("TCPA") and two separate provisions of the Florida Consumer Collection Practices Act Fla. Stat. § 559.72 *et seq*. ("FCCPA"). The Defendant now seeks judgment as a matter of law pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## NATURE OF THE CASE

Ms. Johnson opened her Dress Barn Account, which has an account number ending in 6593, on October 19, 2015. Reedy Decl. ¶ 8. Plaintiff regularly used her Dress Barn Account; her last purchase was on June 6, 2016. Reedy Decl. ¶ 10. Plaintiff defaulted on her Dress Barn Account

Light & Gonzalez, PLLC, 8751 W. Broward Blvd., Suite 209, Plantation, FL 33324
Telephone: 754-900-6545 | Fax: 754-203-2700 | Email: service@lightgonzalezlaw.com | https://lightgonzalezlaw.com

by failing to make payments. Reedy Decl. ¶ 11.  Ms. Johnson revoked her consent to receive call to her cellular telephone beginning in the aftermath of Hurricane Irma which struck South Florida in September of 2017.  Pl.'s Ver. Rog. Resp. Nos. 7, 8; Johnson Decl. ¶¶ 3, 4.  On this phone call Ms. Johnson informed Capital One that she could not afford to make any payments on the credit card due to the hardship that Hurricane Irma had cause Ms. Johnson and her family. Johnson Decl. ¶¶ 3.  Ms. Johnson is not sure of the exact date of this conversation, because she was not logging her telephone calls during that period, but she is sure it occurred sometime after Hurricane Irma hit South Florida in September of 2017.  Johnson Decl. ¶ 4.

On November 5, 2017, Ms. Johnson received a telephone call from Capital One wherein she faked a British accent and informed the Capital One representative that he had the wrong number in an attempt to get Capital One to stop calling her cellular telephone.  Johnson Decl. ¶ 5. The call description of this call reflected in Capital One's call log states "Do Not Call Again". Pink Decl. Ex. A at 1.  The Capital One Representative interpreted Ms. Johnson's "wrong number" response to mean that they should not call again, and in fact this is exactly what Ms. Johnson intended to accomplish through her response. Pink Decl. Ex. A p. 1.; Johnson Decl. ¶ 5.

Ms. Johnson answered quite a number of calls thereafter. Johnson Decl. ¶ 5. Ex. A.; Pink Decl. Ex. A.  On May 8, 2018 Ms. Johnson visited Light & Gonzalez, PLLC for consultation on a legal matter unrelated to this action or Capital One.  Johnson Decl. ¶ 5.  Light & Gonzalez, PLLC provided Ms. Johnson information about her rights under federal and state consumer protection laws and provided her with a debt collection call log to document any harassing telephone calls she may receive from debt collectors or creditors. Johnson Decl. ¶ 6–9.  Notably, the first page of the debt collector call log instructs a user on how to revoke any consent a user may have given a

Light & Gonzalez, PLLC, 8751 W. Broward Blvd., Suite 209, Plantation, FL 33324
Telephone: 754-900-6545 | Fax: 754-203-2700 | Email: service@lightgonzalezlaw.com | https://lightgonzalezlaw.com

company to make calls to a user's cellular telephone using automatic telephone dialing system technology and/or a pre-recorded message:



Johnson Decl. Ex. A.

Ms. Johnson then began documenting the calls she received from Capital One. Johnson Decl. ¶9.  On May 9, 2018, Ms. Johnson received two telephone calls to her cellular telephone number from Capital One. Johnson Decl. Ex. A at 1; Pink Decl. Ex. A. On the second call, Ms. Johnson answered.  Johnson Decl. Ex. A at 1.  Upon answering there was initially a pause before being connected with a Capital One representative.  Johnson Decl. Ex. A. at 1.  Ms. Johnson read the opt-out given to her by Light & Gonzalez, PLLC and told the Capital One representative: "Do not call me using and autodialer or a pre-recorded message anymore." Johnson Decl. ¶13, Ex. A. at 1.  Ms. Johnson documented her revocation of consent to in the very first entry of the call log:

| | Date of Call? (MM/DD/YY) | Time of Call? (00:00 AM) | Minutes Call Lasted? (Approx.) | Phone Call, Voicemail, Letter, Paper Message? | Collector Name? | Collector Company & Phone Number? | Was there a robot or a pre-recorded message before you spoke to a person? What did the collector say? Threats? Amount Demanded? Profanity? (Use as much room as you need) |
|---|---|---|---|---|---|---|---|
| Read Opt out | 5/9/18 | 4:28 | 53.5x roots | Phone Call | | Dress Barn 4 Capital | Dialer — Pause |

Johnson Decl. ¶13, Ex. A. at 1.

On May 10, 2018 Capital One called Ms. Johnson again.  Johnson Decl. Ex. A at 1.  Like the previous calls, when Ms. Johnson answered there was a pause before being connected to an operator named Crystal.  Johnson Decl. Ex. A at 1.  Later in the day on May 10, 2018, Capital One

Light & Gonzalez, PLLC, 8751 W. Broward Blvd., Suite 209, Plantation, FL 33324
Telephone: 754-900-6545 | Fax: 754-203-2700 | Email: service@lightgonzalezlaw.com | https://lightgonzalezlaw.com

called Ms. Johnson again. Johnson Decl. Ex. A at 1.   Again, there was a pause before being

connected to an operator named Michael.   Johnson Decl. Ex. A at 1.  On May 11, 2018, Capital

One called Ms. Johnson again, and again, there was a pause before being connected to an operator

named Mickey. Johnson Decl. Ex. A at 1.  On May 14, 2018, Capital One called Ms. Johnson

again, and again, there was a pause before being connected to an operator named Linda. Johnson

Decl. Ex. A at 1.  On May 16, 2018, Capital One called Ms. Johnson, and after waiting to be

connected to Capital One representative named Bill. Ms. Johnson asked Bill directly if he had

called her using an autodialer and he confirmed that he had:

| 5/16/18 | -358 | 1:02 | Phone | Bill | Dress Barn Capital one | Did confirm it is a dialer. |
|---------|------|------|-------|------|------------------------|-----------------------------|

Johnson Decl. ¶15, Ex. A at 2.

Despite also specifically revoking her consent to receive pre-recorded messages, on May

19, 2018 at 12:55 p.m., May 20, 2018 at 11:47 a.m., May 23, 2018 at 5:35 p.m., May 24, 2018 at

2:55 p.m., May 24, 2018 at 11:54 a.m., May 26, 2018 at 11:03 p.m., May 30, 2018 at 2:36 p.m.,

and on dozens other occasions Ms. Johnson received a pre-recorded voicemail messages from

Capital One. Johnson Decl. ¶16, Ex. A at 3–4, Ex. B.

Ms. Johnson's personal, handwritten log only contains a sampling of the calls Ms. Johnson

received from Capital One.  *Compare* Johnson Decl. Ex. A *with* Pink Decl. Ex. A.  Capital One's

records reflect that from November 5, 2017 until June 20, 2018 Capital One placed a total of 288

calls to Ms. Johnson's cellular phone. Pink Decl. Ex. A.  Capital One's records reflect that after

her May 9, 2018 revocation Capital One place a total of 81 calls to Ms. Johnson's cell phone.  Pink

Decl. Ex. A.  Capital One's records reflect that after her May 9, 2018 revocation Capital One sent

36 pre-recorded messages to Ms. Johnson's cellular voicemail box. Pink Decl. Ex. A.

Light & Gonzalez, PLLC, 8751 W. Broward Blvd., Suite 209, Plantation, FL 33324
Telephone: 754-900-6545 | Fax: 754-203-2700 | Email: service@lightgonzalezlaw.com | https://lightgonzalezlaw.com

## MEMORANDUM OF LAW AND ARGUMENT

Genuine issues of material fact preclude the entry of judgment as a matter of law in this matter. Specifically, there are genuine issues of material fact as to 1) whether Capital One contacted Ms. Johnson using an automatic dialer after November 5, 2017; 2) whether Ms. Johnson had revoked he consent to receive phone calls of the nature that she received, including automatic dialed calls and pre-recorded messages; and

## I.   STANDARD FOR SUMMARY JUDGMENT

Entry of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, admissions, affidavits, and other materials as would be admissible in evidence on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fla. R. Civ. P. 1.510(c). *Landers v. Milton*, 370 So. 2d 368 (Fla. 1979). The fundamental purpose of summary judgment is to expedite litigation and avoid the unnecessary expense of trial. *Ecuatoriana De Aviacion, C.A. v. U.S. and Overseas Corp.*, 144 So. 2d 338 (Fla. 3d DCA 1962). Once the movant has supported the motion for summary judgment with competent evidence, the burden shifts to the opposing party to produce evidence creating a disputed issue of material fact. *See Landers v. Milton*, 370 So. 2d 368 (Fla. 1970); *Johnson v. Gulf Life Ins. Co.*, 429 So. 2d 744 (Fla. 3d DCA 1983).

The moving party for summary judgment has the burden to demonstrate conclusively the nonexistence of any genuine issue of material fact. A reviewing court will consider the evidence contained in the record, including any supporting affidavits, in the light most favorable to the nonmoving party. If the slightest doubt exists, summary judgment cannot stand. *See Mivan*

Light & Gonzalez, PLLC, 8751 W. Broward Blvd., Suite 209, Plantation, FL 33324
Telephone: 754-900-6545 | Fax: 754-203-2700 | Email: service@lightgonzalezlaw.com | https://lightgonzalezlaw.com

*(Florida). Inc. v. Metric Constructors. Inc.*, 857 So. 2d 901, 902 (Fla. 5th DCA 2003); *Krol City of Orlando*, 778 So. 2d 490, 491–92 (Fla. 5th DCA 2001).

## II.   THERE ARE GENUINE ISSUES OF MATERIAL FACT AS TO MS. JOHNSON'S TCPA CLAIMS

There are genuine issues of material fact as to 1) whether Capital One contacted Ms. Johnson using an automatic dialer after November 5, 2017;  and 2) whether Ms. Johnson had revoked he consent to receive phone calls of the nature that she received, including automatic dialed calls and pre-recorded messages and therefore Capital One's Motion for Summary Judgment must be denied.

### A.   There is a Genuine Issue of Material Fact as to Whether Capital One Used an ATDS and Pre-Recorded Messages to Contact Ms. Johnson

The TCPA prohibits any person from calling a cell phone (1) "using any automatic telephone dialing system or an artificial or prerecorded voice"; (2) "without obtaining the prior express consent of the called party"; and (3) "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call."  47 U.S.C. § 227(b)(1)(A)(iii).   The TCPA defines the term "automatic telephone dialing system" as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).  Experts cannot offer a conclusion as to the legal definition of an "automatic telephone dialing system" under the TCPA as this is a legal conclusion.  *Legg v. Voice Media Grp., Inc.*, No. 13-62044-CIV, 2014 U.S. Dist. LEXIS 61322, at *13–14 (S.D. Fla. May 2, 2014). "Courts routinely consider a description of a 'pause' to be enough factual support for the allegation a defendant used an ATDS."  *Wijesinha v. Bluegreen Vacations Unlimited, Inc.*, No. 19-20073-

CIV, 2019 U.S. Dist. LEXIS 57136, at *15 (S.D. Fla. Apr. 3, 2019) (citing *Cunningham v. Yellowstone Capital LLC*, No. 0:16-CV-62029, 2016 WL 11163899, at *2 (S.D. Fla. Dec. 13, 2016) and *De Los Santos v. Millward Brown, Inc.*, No. 13-80670-CV, 2014 U.S. Dist. LEXIS 88711, 2014 WL 2938605, at *3 (S.D. Fla. June 30, 2014)).

Contrary to Capital One's assertion, Ms. Johnson has submitted ample evidence to raise a genuine issue of material fact as to whether Capital One called her using an automatic telephone dialing system. Ms. Johnson testified that when the calls from Capital One that she answered bore the tell-tale signs of coming from an automatic dialer. Specifically, on every call Ms. Johnson answered from Capital One there was a noticeable pause before being connected to a Capital One representative. Additionally, Ms. Johnson testified that on May 16, 2019, she asked a Capital One named "Bill" whether Capital One was calling her using an automatic dialer, and Bill confirmed that they had been. The combination of the admission from a Capital One representative that they were in fact contacting Ms. Johnson using an automatic dialer, and Ms. Johnson's personal observations about the phone calls bearing the features of autodialed calls creates a genuine issue of material fact as to whether Capital One placed phone calls using an automatic telephone dialing system to Ms. Johnson's cell phone.

Additionally, Ms. Johnson has submitted evidence that demonstrates she was contacted using pre-recorded messages. Ms. Johnson testified she received at least 36 identical, pre-recorded voicemail messages from Capital One. Capital One's own records corroborate Ms. Johnson's handwritten records and reflect they sent 36 voicemail messages after she specifically instructed Capital One not to use pre-recorded messages to contact her on May 9, 2018.

This evidence, when viewed in the light most favorable to Ms. Johnson is sufficient to establish a genuine issue of material fact as to whether Capital One contacted Ms. Johnson using

Light & Gonzalez, PLLC, 8751 W. Broward Blvd., Suite 209, Plantation, FL 33324
Telephone: 754-900-6545 | Fax: 754-203-2700 | Email: service@lightgonzalezlaw.com | https://lightgonzalezlaw.com

an automatic telephone dialing system or a pre-recorded message.  *See Light v. Seterus*, No. 18-cv-62291-JIC, Order Denying Cross-Motions for Summary Judgment, D.E. 37 at 4–6 (S.D.Fla. May 20, 2019) (denying motion for summary judgment on issue of ATDS when plaintiff testified the defendant representative told him they contacted him using an automatic dialer and the phone calls bore the tell-tale signs of an automatic dialer); *cf. Wijesinha v. Bluegreen Vacations Unlimited, Inc.*, No. 19-20073-CIV, 2019 U.S. Dist. LEXIS 57136, at *15 (S.D. Fla. Apr. 3, 2019) (noting that a description of a 'pause' is enough factual support for the allegation a defendant used an ATDS).

### B.   There are Genuine Issues of Material Fact as to Whether Ms. Johnson Revoked Her Prior Express Consent to Receive Calls from an Automatic Dialing System and to Receive Pre-Recorded Messages

Ms. Johnson revoked her consent to receive autodialed calls on multiple occasions.  Ms. Johnson has sworn under penalty of perjury that she told Capital One to stop calling her cell phone in the immediate aftermath of Hurricane Irma, which struck South Florida in September of 2017.  Additionally, Ms. Johnson's statement to Capital One on November 5, 2017, that they had the wrong number could reasonably be interpreted as a revocation of consent to receive telephone calls as Capital One themselves interpreted the statement in such a way. Finally, on May 9, 2018 Ms. Johnson instructed Capital One not to call her using an autodialer or a pre-recorded message anymore; this instruction was sufficient to revoke Ms. Johnson's consent to receive autodialed calls.

The "issue of consent is ordinarily a factual issue," *Thompson v. Louisiana*, 469 U.S. 17, 23, 105 S. Ct. 409, 83 L. Ed. 2d 246 (1984).  "Congress sought to incorporate 'the common law concept of consent" into the TCPA. *Osorio v. State Farm Bank*, 746 F.3d 1242, 1256 (11th Cir. 2014).  The TCPA exempts calls made "with the prior express consent of the called party," but a

Page 8 of 24

party may orally revoke his or her consent. See *id.*, 746 F.3d at 1255.  At common law, consent is a willingness for certain conduct to occur. *See* Restatement (Second) of Torts § 892A(1) (1979); William Prosser, Law of Torts § 18, at 101 (4th ed. 1971).  Such willingness can be limited, i.e., restricted. *See* Restatement (Second) of Torts § 892A(3) & cmt. g.  While the FCC has explained that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary," *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* (1992 FCC Ruling), 7 FCC Rcd. 8752, 8769, "[O]ral revocation is sufficient to withdraw prior express consent."  *Lawrence v. Bayview Loan Servicing, LLC*, 666 F. App'x 875, 879 (11th Cir. 2016) (citations omitted); *see also* 2015 FCC Ruling, 30 FCC Rcd. at 7965 (noting that "[c]onsumers may revoke consent at any time and through any reasonable means").  At least one court has noted that "it is quite likely that a defaulting customer may reply with 'wrong number' when the customer answers a call from the creditor collecting a past due debt" or otherwise intentionally mislead the caller. *Wilson v. Badcock Home Furniture*, 329 F.R.D. 454, 459 (M.D. Fla. 2018).

Furthermore, a called party may limit his consent as he likes, consenting to one act but not another; under some conditions, but not others.  *Schweitzer v. Comenity Bank*, 866 F.3d 1273, 1276 (11th Cir. 2017).  "So, if an actor exceeds the consent provided, the permission granted does not protect him from liability for conduct beyond that which is allowed. *Id.* (citing Restatement (Second) of Torts § 892A(4) & cmt. h. and *Cf. McCabe v. Vill. Voice, Inc.*, 550 F. Supp. 525, 529 (E.D. Pa. 1982)). Partial revocations of consent are consistent with the common law principles of consent, and the Eleventh Circuit has ruled partial, oral revocation is effective against autodialed calls. *See Schweitzer*, 866 F.3d at 1279–80 (holding that a consumer may partially revoke their

consent to receive calls in "the morning" or "during the workday").  Importantly, once a plaintiff revokes her consent to receive ATDS calls, her silence on subsequent calls cannot be construed as renewed consent to that specific conduct.  *See Light v. Seterus*, No. 18-cv-62291-JIC, Order Denying Cross-Motions for Summary Judgment, D.E. 37 at 8 (S.D.Fla. May 20, 2019); *cf. Lawrence v. Bayview Loan Servicing, LLC*, 152 F. Supp. 3d 1376, 1382 (S.D. Fla.) (noting that a called party can limit his consent to receive calls from an ATDS while still consenting to receive calls to that number).

### 1. Ms. Johnson Revoked Her Consent On Three Separate Occasions

Here, Ms. Johnson has submitted evidence that she revoked her consent to receive calls to her cell phone in varying ways and on three occasions.  Her testimony is consistent and often corroborated by Capital One's own records.

First,  Ms. Johnson has testified she told Capital One to stop calling her in the aftermath of Hurricane Irma.  While she believes this was in September of 2017, as this was the immediate aftermath of the disaster, she is unsure of the exact date. Simply because Ms. Johnson was initially mistake about the date of this revocation does not require this Court to discount her testimony in its entirety.  Her responses to interrogatories were based on her personal recollection of the telephone calls which it appears were mistaken as to month, but not as to the substance or general time frame.

Second, Ms. Johnson has testified that she dawned a fake British accent and told Capital One that they had the wrong number with the intention and hope that Capital One would stop

Light & Gonzalez, PLLC, 8751 W. Broward Blvd., Suite 209, Plantation, FL 33324
Telephone: 754-900-6545 | Fax: 754-203-2700 | Email: service@lightgonzalezlaw.com | https://lightgonzalezlaw.com

calling her.[1]  This type of behavior is commonplace from debtors with one court even calling it "quite likely" to occur.  *See Wilson*, 329 F.R.D. at 459 (M.D. Fla. 2018). Capital One could have drawn two reasonable conclusions from this call: 1) Capital One had in fact called the wrong party; or 2) that the Ms. Johnson was attempting to deceive them into thinking she was someone else in order to get them to stop calling.  In either of these two scenarios, a trier of fact could conclude that Ms. Johnson had revoked her consent to receive calls from Capital One, and Capital One could no longer call Ms. Johnson using an autodialer or a pre-recorded message.  Indeed, the Capital One representative who spoke with Ms. Johnson interpreted the phone call as such and notated "Do Not Call Again" on Capital One's call log. Under the totality of the circumstances, Ms. Johnson's statement to Capital One that they had the wrong number was a reasonable means of revoking consent to receive calls, and therefore the calls should have stopped.

Lastly, Ms. Johnson testified she explicitly told a Capital One representative "Do not call me using and autodialer or a pre-recorded message anymore." Ms. Johnson kept a handwritten record of giving Capital One this opt-out at the instruction of her attorneys.  The opt-out language is written directly Ms. Johnson's personal call log, and Ms. Johnson testified that she read this revocation to the Capital One representative on May 9, 2018.  This phone call is corroborated by Capital One's own call log, and Capital One does not dispute that the call itself took place.

Although, Capital One denies Ms. Johnson revoked her consent on any of these three occasions, just like as the Eleventh Circuit held in *Osorio*, this is exactly the kind of factual dispute

---

[1] Capital One has submitted a copy of this recording and a transcript thereof in support of is Motion for Summary Judgment. Pink Decl. Ex. B.  Capital One also admits that the called party was "presumably [Ms. Johnson]." *See* [D.E. 24] at 5.

Light & Gonzalez, PLLC, 8751 W. Broward Blvd., Suite 209, Plantation, FL 33324
Telephone: 754-900-6545 | Fax: 754-203-2700 | Email: service@lightgonzalezlaw.com | https://lightgonzalezlaw.com

that cannot properly be resolved on summary judgment.  *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1256 (11th Cir. 2014).

2.  *Neither Ms. Johnson Nor Her Counsel Have Committed Misconduct*

The fact that Ms. Johnson was advised by her attorney's on how to effectively revoke her consent to receive pre-recorded messages or autodialed calls to her cellphone should not change this Court's analysis.  It is undisputed that the Telephone Consumer Protection Act does not prohibit all type of calls to a user's cell phone.  When a party revokes their consent to receive all types of calls (manually dialed and automatically dialed) to their cellular telephone, a caller will not have violated the TCPA when a called is manually dialed.  Similarly, the common law does not require a called party to revoke their consent to behavior on multiple occasions.  A single revocation, done through any reasonably mean of communication is effective to revoke or limit one's consent.

Capital One complains that Ms. Johnson and her counsel "manufactured" her TCPA claim and that this constitutes "misconduct" on behalf of Ms. Johnson and her counsel.  She implies that Ms. Johnson's counsel is part of "a core, but relatively small, group of attorneys [that] are coaching consumers to make minimalistic and confusing statements... in the hope that calls will continue so they can claim each subsequent call violated the TCPA. Capital One asserts that the TCPA is not a strict liability statute, and that courts have recognized equitable defenses[2] to TCPA claims.

"The TCPA creates a private right of action and is 'essentially a strict liability statute . . . except when awarding treble damages,' in which case intent is required."  *Wijesinha v. Bluegreen Vacations Unlimited, Inc.*, No. 19-20073-CIV, 2019 U.S. Dist. LEXIS 57136, at *4 (S.D. Fla. Apr.

---

[2] None of the equitable defenses now alleged were asserted in Capital One's Answer to Complain [D.E. 7].

Light & Gonzalez, PLLC, 8751 W. Broward Blvd., Suite 209, Plantation, FL 33324
Telephone: 754-900-6545 | Fax: 754-203-2700 | Email: service@lightgonzalezlaw.com | https://lightgonzalezlaw.com

3, 2019) (quoting *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011);

*accord Critchlow v. Sterling Jewelers, Inc.*, No. 8:18-cv-96-T-30JSS, 2018 U.S. Dist. LEXIS

222933, at \*6 (M.D. Fla. Nov. 13, 2018); *Mesa v. Am. Express Educ. Assurance Co.*, No. 16-CV-

24447-HUCK, 2017 U.S. Dist. LEXIS 75770, at \*13 (S.D. Fla. May 18, 2017); *Heard v.

Nationstar Mortg. LLC*, No. 2:16-cv-00694-MHH, 2018 U.S. Dist. LEXIS 143175, at \*8 (N.D.

Ala. Aug. 22, 2018).

Capital One cites to *Phan v. Convergent Outsourcing, Inc.*, No. 3:14-cv-84-J-25 JBT, 2015

U.S. Dist. LEXIS 183620, at \*2 (M.D. Fla. Mar. 27, 2015) and *D'Ottavio v. Slack Technologies*,

No. 18-09082, 2019 WL 1594270; 2019 U.S. Dist. LEXIS 64069 (D.N.J. Apr. 15, 2019) and

suggests that this Court should consider sanctions against Ms. Johnson and her counsel for the

claims she has asserted, but these cases are inapposite. In *Phan* the Defendant submitted "ample

evidence that it *never* called the Plaintiff's cell phone". *Phan v. Convergent Outsourcing, Inc.*,

2015 U.S. Dist. LEXIS 183620, at \*3. (emphasis in original).  The evidence also supported that

plaintiff had fabricated evidence and committed perjury. *Id.*  In *D'Ottavio*,  the defendant alleged

that the plaintiff fraudulently manufactured his TCPA claims by sending thousands of text

messages to himself. *D'Ottavio v. Slack Technologies*, 2019 U.S. Dist. LEXIS 64069 \*12–13.

Here Capital One admits to calling Ms. Johnson's cell phone almost 300 times over the course of

eight months. Capital One does not assert Ms. Johnson called herself using an autodialer on any

of these phone calls. Nor does Capital One assert that Ms. Johnson sent herself and pre-recorded

messages on any of these phone calls.

Whether Ms. Johnson's counsel has previous engaged in TCPA litigation (on behalf of

others or as a plaintiff) "is ultimately irrelevant concerning the topic of this litigation" of whether

Capital One Defendant placed an unsolicited, unauthorized, auto-dialed or pre-recorded messages

Light & Gonzalez, PLLC, 8751 W. Broward Blvd., Suite 209, Plantation, FL 33324
Telephone: 754-900-6545 | Fax: 754-203-2700 | Email: service@lightgonzalezlaw.com | https://lightgonzalezlaw.com

calls to Ms. Johnson in violation of the TCPA's prohibition on the same. *See Abramson v. 1 Glob. Cap., LLC*, No. 15-cv-61373-BLOOM/Valle, 2015 U.S. Dist. LEXIS 181721, at *8 (S.D. Fla. Sep. 21, 2015). Additionally, the doctrine of unclean hands is an affirmative defense that Defendant must have raised in its Answer, and it did not. *See* Fed. R. Civ. P. 8(c)(1); [D.E. 7].

Capital One audaciously asserts "Plaintiff's conduct is the cause of her claims and Capital One has been harmed by, *inter alia*, expending efforts to pursue the debt and being tricked into this litigation and other related costs." [D.E. 24] at 15. To be clear, Ms. Johnson never invited Capital One to call her using an automatic dialer or a pre-recorded message after she revoked her consent on three separate occasions. After a Capital One representative notated "Do Not Call Again" in its call log, Capital One's records show they called Ms. Johnson's number the very next day. Ms. Johnson exercised her right to limit/revoke her consent to receive autodialed calls and pre-recorded messages given to her under the Telephone Consumer Protection Act, and in doing so she gave Capital One specific instructions provided to her by her counsel that should have had the effect of stopping the calls. Binding Eleventh Circuit case law states that a called party may limit his consent as he likes, consenting to one act but not another; under some conditions, but not others. *Schweitzer v. Comenity Bank*, 866 F.3d 1273, 1276 (11th Cir. 2017); *see also Light v. Seterus*, No. 18-cv-62291-JIC, Order Denying Cross-Motions for Summary Judgment, D.E. 37 at 8 (S.D.Fla. May 20, 2019); *cf. Lawrence v. Bayview Loan Servicing, LLC*, 152 F. Supp. 3d 1376, 1382 (S.D. Fla.) (noting that a called party can limit his consent to receive calls from an ATDS while still consenting to receive calls to that number). "[I]f an actor exceeds the consent provided, the permission granted does not protect him from liability for conduct beyond that which is allowed. *Id.* (citing Restatement (Second) of Torts § 892A(4) & cmt. h. and *Cf. McCabe v. Vill. Voice, Inc.*, 550 F. Supp. 525, 529 (E.D. Pa. 1982)).

Light & Gonzalez, PLLC, 8751 W. Broward Blvd., Suite 209, Plantation, FL 33324
Telephone: 754-900-6545 | Fax: 754-203-2700 | Email: service@lightgonzalezlaw.com | https://lightgonzalezlaw.com

Viewing the facts in the light most favorable to Ms. Johnson, Capital One choose to blatantly ignore Ms. Johnson's instructions whereby she revoked and then limited her consent, and in doing so Capital One also blatantly ignored the law in the Eleventh Circuit.  Consequently, this Court should not enter judgment as a matter of law against Ms. Johnson.

## III.     THERE ARE GENUINE ISSUES OF MATERIAL FACT AS TO MS. JOHNSON'S FCCPA CLAIMS

There are genuine issues of material fact as to 1) whether Capital One willfully communicated with Ms. Johnson which such frequency as could be reasonably expect to harass her; 2) whether Capital One asserted a legal right that did not exist was asserted and that person knew the legal right did not exist; 3) whether Capital One's violation was the result of bona fide error; and 4) whether Ms. Johnson can sufficiently prove actual damages.

### A.  There are Genuine Issues of Material Fact as to Whether Capital One's Incessant Calls Could Reasonably Have Reasonably Been Expect to Harass Her.

When viewing the evidence in the light most favorable to Ms. Johnson there is a genuine issue of material fact as to whether Capital One's communicated with such frequency as could be reasonably be expected to harass Ms. Johnson.  Capital One ignored Ms. Johnson's revocations and limitations of her consent to receive telephone calls even after it should have been apparent to Capital One that she did not have the ability to pay the debt to Capital One.  Capital One continued to contact Ms. Johnson using an autodialer and pre-recorded messages after she gave them specific instructions provided to her by her attorneys to revoke her consent to receive those types of communications. Consequently, there is a genuine issue of material fact as to this issue.

Capital One correctly asserts that Section 559.72(7) of the FCCPA prohibits a party collecting consumer debts from"[w]illfully communicat[ing] with the debtor … with such frequency as can reasonably be expected to harass the debtor …, or willfully engag[ing] in other

conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family," Fla. Stat. § 559.72(7). To prove a violation, Plaintiff must show that Capital One's "communications were willfully placed and that the frequency of those communications could reasonably be expected to harass" her. *See In re Whitaker*, No. 09-01619, 2013 Bankr. LEXIS 2039 at *6 (Bankr. M.D.Fla. May 10, 2013); *Bacelli v. MFP, Inc.*, 729 F. Supp. 2d 1328, 1337 (M.D. Fla. 2010).

Furthermore, "FCCPA § 559.72(7) claims are construed in the same manner as claims under 15 U.S.C. § 1692d(5) of the Fair Debt Collection Practices Act." *Karandreas v. Loancare*, LLC, No. 6:18-cv-1411-Orl-40TBS, 2019 U.S. Dist. LEXIS 51565, at *5–6 (M.D. Fla. Mar. 27, 2019) (citation and internalmquotation marks omitted).   "This construction requires courts to view the allegedly harassing debt collection practices from the perspective of a consumer whose circumstances makes him relatively more susceptible to harassment, oppression, or abuse." *Id.; see also Waite v. Financial Recovery Services, Inc.*, No. 8:09-cv-02336-T-33AEP, 2010 U.S. Dist. LEXIS 133438, 2010 WL 5209350, at *3 (M.D.Fla. Dec.16, 2010) (citing *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179 (11th Cir. 1985)); *Beeders v. Gulf Coast Collection Bureau*, 796 F. Supp. 2d 1335, 1337–38 (M.D. Fla. 2011).   Whether conduct is harassing also requires an analysis of the "circumstances of the specific case." *Ortega v. Collectors Training Inst. of Ill., Inc.*, No. 09-21744, 2010 U.S. Dist. LEXIS 150657, at *17 (S.D. Fla. Mar. 31, 2010) ("there is no bright-line rule for determining whether a communication is abusive or harassing in nature; rather, to violate the FCCPA, the behavior must be evaluated as a whole under the circumstances."). Courts often consider the volume and pattern of calls made to the debtor. *See Brandt v. I.C. Sys., Inc.*, No. 8:09-cv-126-T-26MAP, 2010 U.S. Dist. LEXIS 14588, 2010 WL 582051, at *2 (M.D.Fla. Feb. 19, 2010); *accord Beeders v.*, 796 F. Supp. 2d at 1337–38 (M.D. Fla. 2011). "Actionable harassment

Light & Gonzalez, PLLC, 8751 W. Broward Blvd., Suite 209, Plantation, FL 33324
Telephone: 754-900-6545 | Fax: 754-203-2700 | Email: service@lightgonzalezlaw.com | https://lightgonzalezlaw.com

or annoyance turns on the volume and pattern of calls made, irrespective of the substance of the messages." *Majeski v. I.C. Sys., Inc.*, No. 08 C 5583, 2010 U.S. Dist. LEXIS 1830, 2010 WL 145861, at *3 (N.D.Ill. Jan. 8, 2010). "[H]arassment under the FDCPA involves a pattern of conduct, not isolated acts."   *Light v. Seterus, Inc.*, 337 F. Supp. 3d 1210, 1215 (S.D. Fla. 2018) (citing *Beeders*, 796 F.Supp.2d at 1337)).   "[I]ntent often requires recourse to circumstantial evidence." *Sclafani v. Receivables Performance Mgmt., LLC*, No. 10-60742-CIV-JORDAN, 2011 U.S. Dist. LEXIS 155394, at *8 (S.D. Fla. May 31, 2011) (citations omitted). "Whether the frequency and number of calls shows an intent to annoy is a question of degree." *Id.*   The trier of fact may consider calls to inform or remind a debtor of a debt harassment after all information has been communicated to the debtor and reasonable effort as persuasion and negotiation have failed. *Schauer v. Morse Operations, Inc.*, 5 So. 3d 2, 5 (Fla. 4th DCA 2009).

As stated *supra*, when viewing the evidence in the light most favorable to Ms. Johnson, she revoked her consent to receive telephone calls completely on two separate occasions, and on a third occasion she specifically revoked her consent to receive telephone calls from an autodialer and to receive pre-recorded messages.  After the November 5, 2017 revocation Capital One called Ms. Johnson's cellular phone 288 times.  After Ms. Johnson's specific instructions not to call her using an autodialer or a pre-recorded message on May 9, 2018, Capital One called Ms. Johnson 81 times and sent her 36 identical, pre-recorded voicemail messages. At some time in the aftermath of Hurricane Irma, Ms. Johnson communicated to Capital One that she did not wish to be contacted anymore because she did not have any money to spare due to the hardship Hurricane Irma caused her and her family.

After Ms. Johnson's revoked her consent multiple times and after she told Capital One she could not afford to make any payments due to Hurricane Irma, Capital One's communications

Light & Gonzalez, PLLC, 8751 W. Broward Blvd., Suite 209, Plantation, FL 33324
Telephone: 754-900-6545 | Fax: 754-203-2700 | Email: service@lightgonzalezlaw.com | https://lightgonzalezlaw.com

were of such a nature as could reasonably be expected to harass Ms. Johnson.  Viewing the matter

in from the perspective of the least sophisticated consumer, all reasonable efforts at persuasion and

negotiation had ended, and the continuous, incessant calls were nothing more than a scheme

designed to harass Ms. Johnson and to pressure her into paying off the debt.  Under specific factual

circumstances create a genuine question of material fact.

### B.   There are Genuine Issues of Material Fact  as to Whether Capital One Knew It Could Not Contact Ms. Johnson or Call her Using an Automatic Dialer or a Prerecorded Message

Ms. Johnson does not contend that Capital One did not have the right to pursue collection

on the Dress Barn Account that she had defaulted on, rather Ms. Johnson claim is based upon

Capital One's violation of the TCPA through their use of pre-recorded messages and an autodialer

after Ms. Johnson revoked her consent to receive these types of communications.  Because Capital

One continued to contact Ms. Johnson using an autodialer and pre-recorded messages after she

revoked her consent, and because Capital One knew that it could not contact Ms. Johnson using

an autodialer or a pre-recorded  message once she revoked that consent, Defendant violated Fla.

Stat. Section 559.72(9).

As Capital One accurately recites: "[t]o show a violation of section 559.72(9), 'it must be

shown that a legal right that did not exist was asserted and that the person had actual knowledge

that the right did not exist.'" *Pollock v. Bay Area Credit Serv., LLC*, No. 08-61101, 2009 U.S. Dist.

LEXIS 71169, at *9 (S.D. Fla. Aug. 13, 2009); *see also Bacelli v. MFP, Inc.*, 729 F. Supp. 2d

1328, 1337 (M.D. Fla. 2010) (collecting a debt knowing the consumer filed bankruptcy violates

FCCPA).  However, simply because a debt is legitimate does not give a creditor the right to use

whatever means it feels are necessary to attempt to collect the debt. With respect to determining

what constitutes a misrepresentation of a legal right under section 559.72(9), the court must refer

to other statutes that define legal rights. *Gaalswyk-Knetzke v. Receivable Mgmt. Svcs. Corp.*, No. 8:08-cv-493-T-26TGW, 2008 U.S. Dist. LEXIS 44152, 2008 WL 2224833, at *3 (M.D. Fla. May 27, 2008)); *accord Cardoso v. Suncoast Sch., FCU*, No. 8:12-cv-01428-T-33MAP, 2012 U.S. Dist. LEXIS 173168, at *8 (M.D. Fla. Dec. 6, 2012) (holding the plaintiff sufficiently stated a claim under the FCCPA by alleging that the defendant's violated the Florida Deceptive and Unfair Trade Practices Act).

Here, after Ms. Johnson revoked her consent to receive pre-recorded messages and calls from an automatic dialer, to the extent that Capital One's violations of the TCPA were knowing violations, Capital One will also have violated Section 9 of the Florida Consumer Collection Practices Act.  Viewing the evidence in the light most favorable to Ms. Johnson, after she had revoked her consent Capital One knew they could not communicate with her using a pre-recorded message or an autodialer, but they continued to do so anyway in knowing violation of the rights afforded to her under the Telephone Consumer Protection Act.  Consequently, Defendant's Motion for Summary Judgment on this point should be denied.

### C.  There are Genuine Issues of Material Fact as to Whether Capital One's FCCPA Violations Were the Result of Bonafide Error

Ms. Johnson has raised genuine issues of material fact as to whether Capital One's violations of the FCCPA were intentional and not the result of a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid any such error and therefore Capital One is not entitled to summary judgment on this defense. Capital One alleges it has policies and procedures in place to make sure all calls cease after receipt of a request for calls to stop. Pink Decl. ¶¶ 18–19.  They allege that if such a request is made, the agent would remove the number from the system and code the account to not receive any future calls. Pink Decl. ¶¶ 18–19. Once

Light & Gonzalez, PLLC, 8751 W. Broward Blvd., Suite 209, Plantation, FL 33324
Telephone: 754-900-6545 | Fax: 754-203-2700 | Email: service@lightgonzalezlaw.com | https://lightgonzalezlaw.com

the account is coded to not receive future calls, all calls would immediately stop. Pink Decl. ¶¶ 18–19. First, these allegations are refuted by the record evidence, and second Capital One's procedures, even if adopted, were not adapted and implemented to avoid the violation that occurred here.

The FCCPA provides that "[a] person shall not be held liable in any action brought under this section if the person shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error, notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." Fla. Stat. § 559.77(3); *see Isaac v. RMB Inc.*, 604 F. App'x 818, 820 (11th Cir. 2015) ("A bona fide error is a mistake that occurred in good faith."). "A debt collector asserting the bona fide error defense must show by a preponderance of the evidence that its violation of the Act: (1) was not intentional; (2) was a bona fide error; and (3) occurred despite the maintenance of procedures reasonably adapted to avoid any such error." *Edwards v. Niagara Credit Sols., Inc.*, 584 F.3d 1350, 1352–53 (11th Cir. 2009) (citations omitted). "As used in the Act bona fide means that the error resulting in a violation was made in good faith; a genuine mistake, as opposed to a contrived mistake." *Edwards*, 584 F.3d 1350, 1353 (11th Cir. 2009) (citations and quotation marks omitted). "To be considered a bona fide error, the debt collector's mistake must be objectively reasonable." *Id.* at 1353. (citing *Johnson v. Riddle*, 443 F.3d 723, 729 (10th Cir. 2006)).

1. *Record Evidence Demonstrates Capital One's Actions Were Intentional and Not Bona-fide Error*

Capital One's violations of sections 559.72(9) and 559.72(7) were intentional and not the result of a bona-fide mistake. Capital One asserts that because it had obtained Ms. Johnson prior express consent to send her pre-recorded messages and to contact her using an automatic dialer, if

they violated Ms. Johnson's rights in doing so it could only have been a mistake.  This argument assumes Ms. Johnson did not revoke her consent to receive these types of communications.  As demonstrated *supra*, Ms. Johnson did in fact revoke her consent to receive calls to her cell phone, and she also specifically revoked her consent to receive pre-recorded messages and calls from an autodialer.  Viewing the evidence in the light most favorable to Ms. Johnson, having effectively communicated her revocation, Capital One's subsequent behavior was intentional and cannot be considered objectively reasonable.

      2.  *Capital One's Policies and Procedures Were Not Adapted to Prevent These Violations.*

Capital One asserts that it has adapted its policies and procedures to ensure that it complies with the FCCPA. Capital One submitted the Declaration of Perry Pink who stated that Capital One has a policy to immediately cease all calls if a customer asks for calls to stop.  If such a request is made by a customer, Capital One's policy mandates that the agent remove the number from the account and code the account to no longer receive calls. Once an account is coded as such, the calls will immediately stop. Pink Decl. ¶¶ 18–19.  From this testimony Capital One argues its policies have been reasonably adapted to avoid the violations of the FCCPA that occurred here.

After Ms. Johnson revoked her consent to receive calls on November 5, 2017, the record reflects Capital One did not adhere to their policy.  Even though a Capital One representative notated "Do Not Call Again" in their records, Capital One called Ms. Johnson the very next day; Mr. Pink states himself that after the November 5, 2017 call, the calls continued to the 2114 Number.  Pink Decl. ¶17, Ex. A p. 1.  When viewing this evidence in the light most favorable to Ms. Johnson, Capital One's claim of bona-fide error fails on this point.

Light & Gonzalez, PLLC, 8751 W. Broward Blvd., Suite 209, Plantation, FL 33324
Telephone: 754-900-6545 | Fax: 754-203-2700 | Email: service@lightgonzalezlaw.com | https://lightgonzalezlaw.com

Second, Ms. Johnson's May 9, 2018 limited revocation demonstrates an additional deficiency in Capital One's alleged policy.  Mr. Pink testifies that Capital One's policy is to immediately cease all calls if a customer asks for the calls to stop.  This policy is not adapted to a limited revocation, such as Ms. Johnson's May 9, 2018 revocation, where she only revoked her consent to receive calls from an autodialer or pre-recorded messages.  Mr. Pink has not testified how Capital One's policies or procedures would mandate an agent to act in this situation, and he has not testified whether Capital One's systems would even accommodate this type of limited revocation. Pink Decl. ¶¶ 18–19.

**D.    Ms. Johnson Withdraws Her Claim for Actual Damages**

Lastly Capital One claims Ms. Johnson has failed to provide evidence of any actual damages sustained as a result of Capital One's FCCPA violations. Ms. Johnson hereby withdraws her claim for actual damages and will only seek statutory damages, costs and attorney's fees for Capital One's violations of the FCCPA.

*(Remainder of Page Intentionally Left Blank)*

Light & Gonzalez, PLLC, 8751 W. Broward Blvd., Suite 209, Plantation, FL 33324
Telephone: 754-900-6545 | Fax: 754-203-2700 | Email: service@lightgonzalezlaw.com | https://lightgonzalezlaw.com

## **CONCLUSION**

WHEREFORE, Ms. Johnson has shown there are genuine issues of material fact as to her claims that Capital One violated the Telephone Consumer Protection Act and the Florida Consumer Collection Practices Act TCPA, and therefore Ms. Johnson requests that this Court deny Capital One's Motion for Summary Judgment.

Dated: August 7,  2019                     Respectfully submitted,


                                           /s/  Gregory Light_____
                                           **GREGORY LIGHT, ESQ.**
                                           Florida Bar No.: 120907
                                           **ANTHONY GONZALEZ, ESQ.**
                                           Florida Bar No.: 119756
                                           LIGHT & GONZALEZ, PLLC
                                           8751 W. Broward Blvd., Suite 209
                                           Plantation, FL 33324
                                           Telephone:    754-900-6545
                                           Fax:             754-203-2700
                                           Email: service@lightgonzalezlaw.com
                                           *COUNSEL FOR THE PLAINTIFF*



(*Certificate of Service to Follow*)

Light & Gonzalez, PLLC, 8751 W. Broward Blvd., Suite 209, Plantation, FL 33324
Telephone: 754-900-6545 | Fax: 754-203-2700 | Email: service@lightgonzalezlaw.com | https://lightgonzalezlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed

on August 7, 2019 with the Clerk of Court using CM/ECF. I also certify that the foregoing

document is being served this day on all counsel of record or pro se parties identified on the Service

List below either via transmission of Notices of Electronic Filing generated by CM/ECF.

| | |
|---|---|
| Jenny N. Perkins, Esq.<br>Ballard Spahr, LLP<br>1735 Market Street, 51st Floor<br>Philadelphia, PA 19103<br>perkinsj@ballardspahr.com<br>Telephone: (215) 864-8378<br>*Attorney For Capital One Service, LLC* | |

/s/  Gregory Light_____
**GREGORY LIGHT, ESQ.**
Florida Bar No.: 120907
**ANTHONY GONZALEZ, ESQ.**
Florida Bar No.: 119756
LIGHT & GONZALEZ, PLLC
8751 W. Broward Blvd., Suite 209
Plantation, FL 33324
Telephone:     754-900-6545
Fax:               754-203-2700
Email: service@lightgonzalezlaw.com
*COUNSEL FOR THE PLAINTIFF*